Ronald D. Green, NV Bar # 7360
LaTeigra C. Cahill, NV Bar # 14352
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

MAURICE B. VERSTANDIG, *Pro Hac Vice Forthcoming*
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-576-6885
mac@mbvesq.com

*Attorneys for Plaintiffs*
*Krystal Johnson and Shannon DeLelle*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **KRYSTAL JOHNSON**, on behalf of herself and all others similarly situated, an individual;<br>**SHANNON DELELLE**, on behalf of herself and all others similarly situated, an individual,<br><br>    Plaintiffs,<br><br>  vs.<br><br>**INTU,** a Nevada corporation,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Come now Krystal Johnson ("Ms. Johnson") and Shannon DeLelle ("Ms. DeLelle") (Mesdames Johnson and DeLelle being collectively known as the "Plaintiffs," and each individually being known as a "Plaintiff"), on behalf of

themselves and all others similarly situated, by and through undersigned counsel, and as and for their complaint (the "Complaint") against INTU Corporation ("INTU" or the "Defendant") state as follows:

## PARTIES

1. Ms. Johnson is a natural person who is a citizen of the State of Nevada by virtue of her ongoing domicile in Clark County, Nevada.

2. Ms. DeLelle is a natural person who is a citizen of the Commonwealth of Virginia by virtue of her maintaining a permanent domicile in the County of Fairfax, within the Commonwealth of Virginia, and possessing an ongoing intent to return to said domicile even when engaged in prolonged travels elsewhere.

3. INTU is a corporation formed pursuant to the laws of the State of Nevada, with its principal place of business being in Las Vegas, Nevada.

## JURISDICTION AND VENUE

4. This Honorable Court enjoys jurisdiction over the instant controversy, pursuant to the allowances of Section 1331 of Title 28 of the United States Code, as the Plaintiffs allege herein, *inter alia*, a violation of the Fair Labor Standards Act of 1938 as codified at Section 203, *et seq.* of Title 29 of the United States Code (the "FLSA").

5. This Honorable Court enjoys jurisdiction over the state law claims forming a part of the instant controversy, pursuant to the allowances of Section 1367 of Title 28 of the United States Code, as such claims form a part of the same case and controversy for which there exists jurisdiction pursuant to the allowances of Section 1331 of Title 28 of the United States Code, with such claims being based on the same core employment relationship and concerning the duties and obligations arising thereunder.

6. Venue is properly laid in this Honorable Court, pursuant to the allowances of Section 1391 of Title 28 of the United States Code, as the

Defendant is subject to this Honorable Court's personal jurisdiction with respect to the causes of action enumerated herein, and a substantial part of the events and omissions giving rise to this suit occurred within the State of Nevada.

7. Venue is properly laid in the Southern Division of this Honorable Court, pursuant to the allowances of Local Rule IA 1-8(c), as the events giving rise to the causes of action enumerated herein arose in Clark County.

## GENERAL ALLEGATIONS: CASINO FLOOR MASSAGE SERVICES

8. Myriad casinos across the United States, and in other countries, furnish massage services to patrons in poker rooms and other gaming environments.

9. Unlike traditional massages performed in a spa, these services are performed upon patrons who remain clothed at all times, and who are engaged in the play of one or more casino games while receiving the massage, with treatment emphasizing the portions of an individual's back and arms readily accessible to a massage therapist positioned behind her or him.

10. These gaming-centric massage services have become a common part of the casino environment, with customers increasingly demanding access to the luxury, and casinos vying to furnish skilled massage therapists who keep customers engaged in the gaming environment while deriving a secondary income stream for the subject casino.

11. In lieu of directly employing massage therapists to perform these services, various casinos in the greater Las Vegas area contract with external companies, which employ staffs of massage therapists and deliver them to casinos, on contracted terms, in a seamless and professional manner.

12. The Defendant is one such third party purveyor of massage services, directly contracting with casinos to provide such services and employing numerous trained and qualified individuals who carry out the work.

13. The Defendant currently contracts to provide these services to at least two Las Vegas casinos – the Cosmopolitan and the Aria – and has previously furnished them to at least one other property.

14. Commencing on a date more than three years prior to the date on which this suit is filed, and continuing until a date certain in December 2018, the Defendant was contracted to furnish massage services in the poker room of the Bellagio casino.

15. The Defendant's contract with the Bellagio poker room expired on or about Friday, December 7, 2018.

16. The Bellagio poker room is now furnished with massage services from a separate third-party entity, not made a party hereto, known as Professional Massage Inc. ("PMI").

17. On or about January 5, 2012, Ms. Johnson, then known as Krystal Upham, entered into an employment agreement with the Defendant, being hired to furnish massage services at the locations dictated by the Defendant, and being directed to charge customers the rate of two dollars and no cents ($2.00) per minute, with the Defendant retaining fifty-five percent (55%) of said revenue and Ms. Johnson retaining forty-five percent (45%) of such revenue (the "Johnson Agreement").

18. Though the Johnson Agreement is putatively styled as an independent contractor agreement, Ms. Johnson's work with the Defendant has been in the nature of an employee/employer relationship at all times relevant, with the Defendant dictating (i) the hours at which Ms. Johnson is to commence work; (ii) the hours at which Ms. Johnson is to stop work; (iii) the location(s) at which Ms. Johnson is to work; (iv) the rates Ms. Johnson is to charge customers; (v) the nature of services Ms. Johnson is to furnish to customers; (vi) the manner

and method in which Ms. Johnson is to collect revenue and remit the same to the Defendant; and (vii) when Ms. Johnson may take vacation time.

19. In addition to the foregoing compensation, Ms. Johnson has been compensated by the Defendant an additional five hundred dollars and no cents ($500.00) per month for her work as a lead massage therapist at the Bellagio poker room.

20. On or about January 22, 2018, Ms. DeLelle entered into an employment agreement with the Defendant, being hired to furnish massage services at the locations dictated by the Defendant, and being directed to charge customers the rate of two dollars and no cents ($2.00) per minute, with the Defendant retaining fifty-five percent (55%) of said revenue and Ms. DeLelle retaining forty-five percent (45%) of such revenue (the "DeLelle Agreement").

21. Though the DeLelle Agreement is putatively styled as an independent contractor agreement, Ms. DeLelle's work with the Defendant has been in the nature of an employee/employer relationship at all times relevant, with the Defendant dictating (i) the hours at which Ms. DeLelle is to commence work; (ii) the hours at which Ms. DeLelle is to stop work; (iii) the location(s) at which Ms. DeLelle is to work; (iv) the rates Ms. DeLelle is to charge customers; (v) the nature of services Ms. DeLelle is to furnish to customers; and (vi) the manner and method in which Ms. DeLelle is to collect revenue and remit the same to the Defendant.

22. Mesdames Johnson and DeLelle have, at all times relevant, performed fully under their respective agreements with the Defendant, performing their duties as employees without protest or incident.

23. On multiple occasions, the Defendant has placed Mesdames Johnson and DeLelle in locations where there is a lack of demand for massage services, resulting in Mesdames Johnson and DeLelle working various full one-

hour periods in which no services were rendered, or only *de minimis* services were rendered, and causing Ms. Johnson and Ms. DeLelle to respectively earn less than the prevailing minimum wage for such time periods.

24. On multiple occasions, Ms. Johnson has worked more than forty (40) hours in a given week for the Defendant, with such time periods often coming during the summer months when there is a heightened demand for massage services based on an influx of poker tournaments in the Las Vegas area, yet the Defendant has never paid Ms. Johnson overtime compensation at the legally mandated rate of time and a half for such periods.

## **GENERAL ALLEGATIONS: COVENANTS NOT TO COMPETE**

25. The Johnson Agreement and the DeLelle Agreement both contain a covenant not to compete, providing, in relevant part:

> As a material consideration for Company entering into this Agreement with Contractor, Contractor covenants and agrees that during the term of this Agreement, and for a period of one (1) year following the termination of this Agreement, Contractor shall not directly or indirectly, accept a position (whether as a temporary employee, agency employee, employer, independent contractor, permanent employee, owner, partner, stockholder, or venture participant) with any casino/facility/agency to which Contractor was scheduled to perform the Services by Company.

(the "Covenant Not to Compete").

26. The Covenant Not to Compete is null and void as a matter of law, and has been at all times relevant, as it is greater than is required for the protection of the Defendant and imposes an undue hardship upon Mesdames Johnson and DeLelle.

27. Specifically, it is not clear what, if any, protection is afforded the Defendant by the Covenant Not to Compete, as the individuals who it unlawfully restrains from their trade are not in a position to poach any business of the Defendant, are not imbued with any trade secrets of the Defendant, have no esoteric or specialized knowledge that is proprietary to the Defendant, and create absolutely no competitive threat to the Defendant whatsoever.

28. The Defendant's customers are casinos and poker rooms within casinos; Mesdames Johnson and DeLelle do not service casinos or poker rooms but, rather, individual and largely random persons within such facilities; the Plaintiffs pose absolutely no competitive threat to the Defendant.

29. Similarly, there is no cognizable evidence that patrons of casinos or poker rooms follow individual massage therapists from one location to another; unlike a traditional hotel spa, where customers may form a certain bond that causes them to patronize one therapist or another, the services performed in poker rooms and on casino floors are done so in a manner that makes them an ancillary benefit to the underlying gaming experience.

30. The foregoing notwithstanding, when the Defendant's contract with the Bellagio poker room expired, it notified applicable casino management that numerous individuals, including Mesdames Johnson and DeLelle, are subject to restrictive covenants, and cautioned such management to not permit such individuals to perform massage services on the Bellagio's premises.

31. The Defendant undertook this action directly prior to one of the busiest poker weeks of the year, in which the Bellagio hosts a large and lucrative poker tournament that attracts numerous persons who utilize massage services and who have a tendency to tip their respective purveyors generously.

32. Indeed, Ms. DeLelle traveled from Virginia to Nevada so as to earn money at this specific poker event at the Bellagio, and incurred various costs associated with such travel.

33. Both Ms. Johnson and Ms. DeLelle have an arrangement with PMI, the company now furnishing massage services at the Bellagio, that would permit Ms. Johnson and Ms. DeLelle to carry on about their business performing such services through PMI, but they have been blocked from doing so by the Defendant's illegal invocation of the Covenant Not to Compete.

### **GENERAL ALLEGATIONS: COLLECTIVE ACTION**

34. Mesdames Johnson and DeLelle seek to pursue this case as a collective action, consistent with the allowances of Section 216(b) of Title 29 of the United States Code, with their pursuit being on behalf of the following class of persons:

> All persons who have performed massage services for the Defendant at any time from three (3) years prior to the filing of this action to the date on which judgment is entered herein, who give their consent, in writing, to become party plaintiffs (the "FLSA Class").

35. Mesdames Johnson and DeLelle and other FLSA Class members are similarly situated inasmuch as they have been – and are – required to work certain hours without being compensated the prevailing minimum wage.

36. Ms. Johnson and other FLSA Class members are similarly situated inasmuch as they have been – and are – required to work more than forty (40) hours per week without receiving overtime compensation.

37. The Defendant has known that Mesdames Johnson and DeLelle and the FLSA Class members have performed work that has required payment of the minimum wage, yet the Defendant has nonetheless operated under a scheme

to deprive Mesdames Johnson and DeLelle and the FLSA Class of minimum wage by failing to properly compensate such individuals for the time they have worked.

38. The Defendant has known that Ms. Johnson and the FLSA Class members have performed work that has required payment of overtime compensation, yet the Defendant have nonetheless operated under a scheme to deprive Mesdames Johnson and DeLelle and the FLSA Class of overtime compensation by failing to properly compensate such individuals for the time they have worked.

39. The Defendant's conduct, as alleged *passim*, has been willful and has caused significant damage to Mesdames Johnson and DeLelle and the FLSA Class.

## FIRST CLAIM FOR RELIEF

**Violation of the Fair Labor Standards Act
(Brought by Mesdames Johnson and DeLelle,
on behalf of themselves and all others similarly situated)**

40. Mesdames Johnson and DeLelle repeat and reallege each of the foregoing paragraphs of this Complaint as though fully set forth herein.

41. The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(I).

42. The Defendant was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce.

43. The gross annual volume of sales made by the Defendant, for each relevant year, has been not less than Five Hundred Thousand Dollars and No Cents ($500,000.00).

44. Pursuant to Section 206(a) of Title 29 of the United States Code, Mesdames Johnson and DeLelle and the other FLSA Class members are entitled to be compensated at the prevailing minimum wage for all hours worked.

45. Pursuant to Section 207(a) of Title 29 of the United States Code, Ms. Johnson and the other FLSA Class members are entitled to be compensated "at a rate of not less than one and one-half times the regular rate at which he is employed" for all hours worked, in excess of forty (40) hours, in a given week.

46. The Defendant has violated the FLSA by not paying Mesdames Johnson and DeLelle and the other FLSA Class members the minimum wage to which they are entitled under the foregoing allowance of the FLSA.

47. The Defendant has violated the FLSA by not paying Ms. Johnson and the other FLSA Class members the overtime to which they are entitled under the foregoing allowance of the FLSA.

48. Neither Mesdames Johnson and DeLelle nor the similarly situated FLSA Class members fall within any of the exemptions delineated in Section 213 of Title 29 of the United States Code.

49. Mesdames Johnson and DeLelle and the FLSA Class are victims of a uniform company-wide compensation policy which has deprived them of the overtime compensation to which they are entitled.

50. The Defendant has acted willfully and has either known that its conduct violates the FLSA or has shown reckless disregard for the matter of whether its conduct violates the FLSA.

51. The Defendant has not acted in good faith with respect to the conduct alleged herein.

52. As a result of Defendant's violations of the FLSA, Mesdames Johns and DeLelle and all others similarly situated have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees

1 and costs of litigation, pursuant to the allowances of Section 216 of Title 29 of the
2 United States Code.

## SECOND CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations
### (Brought by Mesdames Johnson and DeLelle)

53. Mesdames Johnson and DeLelle repeat and reallege each of the foregoing paragraphs of this Complaint as though fully set forth herein.

54. Mesdames Johnson and DeLelle each have a valid and existing contract to furnish massage services for clients of PMI, allowing them to perform massage services at the Bellagio poker room.

55. The Defendant is aware that Mesdames Johnson and DeLelle have agreements to furnish massage services for PMI, and has demonstrated such knowledge by, *inter alia*, contacting the management of the Bellagio and indicating that Mesdames Johnson and DeLelle should not be allowed to perform under these agreements because of the Covenant Not to Compete.

56. The Defendant's action has been clearly intentional in nature, as it has taken overt and specific steps to ensure Mesdames Johnson and DeLelle not be able to earn a living performing massages at the Bellagio poker room by, *inter alia*, directly contacting management of the Bellagio.

57. Mesdames Johnson and DeLelle's contractual relations have been actually disrupted, as they have been barred from performing work in the Bellagio poker room for a period of time that is still ongoing as of the filing of this Complaint.

58. Mesdames Johnson and DeLelle have experienced resulting damage, as not only have they lost their ordinary income derivative of massage work, but the Defendant undertook these tortious actions on the eve of one of the highest volume, and most lucrative massage weeks of the year at the

Bellagio, with high rolling poker players being present for a limited time to partake in a widely noted and expensively priced marquee poker tournament over the course of several days.

**PRAYER FOR RELIEF**

WHEREFORE, Mesdames Johnson and DeLelle, on behalf of themselves and all others similarly situated, respectfully pray this Honorable Court:

a. Enter judgment against the Defendant for unpaid wages in a sum to be proven at trial, liquidated damages equal to unpaid wages in a sum to be proven at trial, attorneys' fees and the costs of litigation;

b. Enter judgment against the Defendant and in their respective favor, in an amount equal to their lost wages (inclusive of tip revenue) resulting from the Defendant's intentional interference with their contractual relations;

c. Direct the Defendant to file with this Honorable Court, and furnish to undersigned counsel, a list of all names and addresses of individuals falling within the FLSA Class;

d. Authorize undersigned counsel to issue a notice at the earliest possible time to all members of the FLSA Class, informing them of the existence of this case, informing them of the nature of this case, and informing them of their right to opt into this case;

e. expressly find the Defendant to have violated the FLSA by failing to pay Mesdames Johnson and DeLelle and the FLSA Class the compensation to which they are legally entitled; and

f. Afford such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to, and in accordance with, the allowances of Federal Rule of Civil Procedure 38, Mesdames Johnson and DeLelle pray a trial by jury on all matters so triable.

Dated: December 12, 2018.   Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Ronald D. Green
Ronald D. Green, NV Bar # 7360
LaTeigra C. Cahill, NV Bar # 14352
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

/s/ Maurice B. Verstandig
MAURICE B. VERSTANDIG, *Pro Hac Vice Forthcoming*
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com

*Attorneys for Plaintiffs*
*Krystal Johnson and Shannon DeLelle*