UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KRYSTAL JOHNSON, *et al.*, <br><br> Plaintiff, <br> v. <br> INTU CORPORATION, *et al.*, <br><br> Defendants. | Case No. 2:18-cv-02361-MMD-NJK <br><br> ORDER |
| AND ALL RELATED ACTIONS | |

## I. SUMMARY

Plaintiffs[1] Krystal Johnson, Shannon DeLelle, Crystal Honeck, Dusty Dangerfield, Jennifer Wakuzawa-Kida, Sarah Pascoe, Elizabeth Spangler, and Shannon Thompson seek to represent a putative class of massage therapists—who specialize in providing massages to poker players while they are playing poker—in a wage-and-hour class action under the Fair Labor Standards Act ("FLSA") against the entity with whom they previously entered into independent contractor agreements ("ICAs"), Defendant INTU Corporation, and its founder, Defendant Deanna Edwards. (ECF No. 9.) Before the Court is Plaintiffs' motion to dismiss Defendants' counterclaim for breach of contract, where the contract is the ICAs (the "Motion").[2] (ECF No. 15.) As further explained below, the Court will grant the Motion because Defendants' counterclaim fails to include sufficient factual allegations as to damages. Further, the noncompete clause in the ICAs upon which

---

[1]Plaintiffs are also Counterdefendants as to Defendants' counterclaim (ECF No. 11), but the Court refers to them as Plaintiffs throughout this order. Similarly, the Court refers to Defendants herein, though it could also refer to them as Counterplaintiffs.

[2]The Court has also reviewed Defendants' response (ECF No. 16), and Plaintiffs' reply (ECF No. 17).

1 Defendants seek to rely in establishing the breach element of their breach of contract
2 claim is unenforceable because it is unreasonable under Nevada law.

## II. BACKGROUND

### A. PLAINTIFFS' CLAIMS

The following facts are adapted from Plaintiffs' First Amended Complaint ("FAC"). (ECF No. 9.) Plaintiffs entered into ICAs with Defendant INTU Corporation. (*Id.* at 6-8.) INTU, in turn, would negotiate contracts with various casinos to provide massage therapy services to those casinos' patrons who wanted massages while they were gaming; for example, while playing poker. (*Id.* at 5.) As such, Plaintiffs worked at the various casinos with whom INTU had negotiated agreements, but their contractual relationship was with INTU, through the ICAs, and not with the casinos. (*Id.*) As a relevant example, Plaintiffs provided massages to poker players in the poker room at the Bellagio in Las Vegas, Nevada, but their contractual relationship was with INTU, not the Bellagio. (*Id.*) Plaintiffs generally allege that, despite the phrasing of the ICAs they entered into, they should be considered INTU's employees for FLSA purposes. (*Id.* at 6-10.) They bring six claims, including for violation of the FLSA, and seek damages and certain specified types of injunctive relief. (*Id.* at 15-26.)

The Bellagio did not renew its contract with INTU when it expired towards the end of 2018. (*Id.* at 5.) The ICAs contain a noncompete provision, which Defendants contend means Plaintiffs could not perform massage therapy at the Bellagio after the contract lapsed. (*Id.* at 10-12.) INTU, and also specifically Defendant Edwards, tried to enforce the noncompete provision in the ICAs by warning both Plaintiffs and the Bellagio about it. (*Id.* at 12-13.) But a big poker tournament started at the Bellagio just after the contract between INTU and the Bellagio expired, one that was potentially lucrative for Plaintiffs. (*Id.* at 12.) Therefore, Plaintiffs sought to work the big poker tournament at the Bellagio through independent contractor agreements with a different third party entity—similar to, but not INTU—who is not a party to this case. (*Id.* at 12-13.) Plaintiffs were blocked from working the big poker tournament. (*Id.* at 13.)

## B. DEFENDANTS' COUNTERCLAIM

After Plaintiffs filed their FAC, Defendants filed an answer and counterclaim for breach of contract against Plaintiffs. (ECF No. 11.) Defendants specifically allege that Plaintiffs breached two clauses contained in their ICAs. (*Id.* at 25-26.) Plaintiffs allegedly breached the noncompete clause discussed above, and another clause, which is a covenant not to disclose INTU's confidential information. (*Id.*) Plaintiffs allegedly breached these clauses by: "(1) performing massage services at the Bellagio in violation of the non-compete agreements, and (2) disclosing INTU's confidential information, including its rate structures to INTUs competitors, customers, and others in violation of the nondisclosure agreements." (*Id.* at 25.) The non-compete clause of the ICAs provides as follows:

> As a material consideration for Company [INTU] entering into this Agreement with Contractor [Counter-Defendants], Contractor covenants and agrees that during the term of this Agreement, and for a period of one (1) year following the termination of this Agreement, Contractor shall not directly or indirectly, accept a position (whether as a temporary employee, agency employee, employer, independent contractor, permanent employee, owner, partner, stockholder, or venture participant) with any casino/facility/agency to which Contractor was scheduled to perform the Services by the Company.

(*Id.* at 23.) The covenant not to disclose INTU's confidential information clause provides as follows:

> During the term of this Agreement, Contractor [Plaintiffs] acknowledges and agrees that he/she will have access to, and become familiar with, various trade secrets and/or confidential information, consisting of, but not limited to, client lists, casino/facility/agency contacts, procedures, compilations of information, and rate structuring, which are owned by Company [INTU] (collectively, "Confidential Information"). Contractor covenants and agrees not to disclose any Confidential Information, directly or indirectly, nor use it in any way, either during the term of this Agreement or at any time thereafter, except as required in the course [of] providing the Services on behalf of the Company pursuant to this Agreement. Contractor acknowledges and agrees that the foregoing restrictions are reasonable and necessary to protect the legitimate interests of the Company and its affiliates.

(*Id.* at 23-24.) Defendants generally allege they have been "damaged by loss of business, loss of goodwill, and loss of its competitive advantage in the casino massage services industry" because of Plaintiffs' breaches of these two contractual clauses. (*Id.* at 25.) Defendants also allege they have "been damaged by the [Plaintiffs]' breaches of the non-compete agreements as it is unable to renegotiate and retain its contracts with its customers, who now believe that they can contract with different massage service companies without sacrificing the relationships their patrons have built with INTU's independent contractors." (*Id.*)

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the

1  defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

**IV. DISCUSSION**

Plaintiffs contend Defendants' counterclaim should be dismissed because: (1) it lacks sufficient factual allegations going to Defendants' damages, an element of a claim for breach of contract; (2) the noncompete clause in the ICAs is facially void as unreasonable; and (3) Plaintiffs cannot have misappropriated Defendants' trade secrets because the revenue split between Plaintiffs and Defendants is not a trade secret as a matter of law. (ECF No. 15.) As further explained below, the Court will grant the Motion because Defendants' counterclaim lacks sufficient factual allegations as to Defendants' damages. Further, the noncompete restriction in the ICAs is unenforceable.

"A plaintiff in a breach of contract action must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1245 (D. Nev. 2013) (citation omitted). Thus, damages are an element of Defendants' counterclaim.

Plaintiffs argue that Defendants cannot establish damages as a matter of law because Defendants allege they were harmed by Plaintiffs after Defendants had already lost their contract with the Bellagio. (ECF No. 15 at 3-6.) Defendants counter that their competitor was given a 90 day trial period by the Bellagio after the Bellagio declined to renew its contract with Defendants, and then the Bellagio was going to give them an opportunity to re-bid for a new contract after those 90 days—but the Bellagio never did because Plaintiffs continued to work at the Bellagio through Defendants' competitor. (ECF No. 16 at 4, 7-8.) Plaintiffs reply that this 90 day trial period is not mentioned in— and therefore not part of—Defendants' counterclaim, and thus Defendants have

effectively conceded Plaintiffs' Motion should be granted because Defendants need the allegations about the 90 day trial period for their breach of contract claim to survive dismissal. (ECF No. 17 at 2, 3-5.) The Court agrees with Plaintiffs.

Defendants' counterclaim contains no factual allegations regarding this purported 90 day trial period. But it does contain the allegation that INTU was "unable to renegotiate and retain its contracts with its customers" as result of Plaintiffs' actions. (ECF No. 11 at 25.) The difference between the allegation included in Defendants' counterclaim and the allegations regarding the 90 day trial period in Defendants' response to Plaintiffs' Motion illustrates the difference between conceivable and plausible allegations. As actually alleged in their counterclaim, the damages element of Defendants' breach of contract claim is merely conceivable—and therefore must be dismissed. *See Twombly*, 550 U.S. at 570. With the extra facts provided in Defendants' briefing, Defendants' claim moves towards plausible. However, because those facts tending to show plausibility appear only in Defendants' briefing, but are nowhere in their counterclaim, Defendants have effectively conceded their counterclaim is insufficiently pleaded. Thus, the Court will grant Plaintiffs' Motion and dismiss Defendants' counterclaim.

Further, the noncompete clause that Defendants seek to enforce as one way to establish the breach element of their breach of contract claim is unenforceable because it is unreasonable and overly broad. As written, it prevents Plaintiffs from working for any of INTU's customers, such as the Bellagio, while they work for INTU and for one year thereafter—regardless of the job Plaintiffs might want to take at, say, the Bellagio. (ECF No. 11 at 23.) As Defendants tacitly acknowledge (ECF No. 16 at 11 n.2), the noncompete clause would prevent Plaintiffs from taking a job at the Bellagio as a custodian. That "is overly broad, as it extends beyond what is necessary to protect [INTU's] interests." *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 155, 155-56 (Nev. 2016) (finding similar noncompete provision unreasonable and therefore wholly

unenforceable, and declining to modify the agreement to make it enforceable). Thus, the noncompete provision in the ICAs is unenforceable as written.[3] *See id.* at 155-56.

If, as here, the Court grants a motion to dismiss, it must then decide whether to grant leave to amend. The Court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

The Court will grant Defendants leave to amend their counterclaim. First, Defendants have not previously amended their counterclaim. Further, the Court cannot find that amendment would be futile, except with respect to the noncompete provision in the ICAs. As explained above, the discussion of the 90 day trial period included in Defendants' response may, in an amended counterclaim, bring Defendants' counterclaim closer to the requisite plausibility. In addition, the Court does not address herein Defendants' breach of contract claim to the extent it is based on misappropriation of trade secrets, and thus cannot find that amendment would be futile as to the breach element of Defendants' breach of contract claim.[4]

---

[3]Defendants argue that NRS § 613.195(5) requires the Court re-write the noncompete agreement to make it enforceable. (ECF No. 16 at 11 n. 2.) However, it appears that the Court is only required to re-write an unenforceable noncompete agreement if "the court finds the covenant is supported by valuable consideration." The Court has made no such finding here, at least not at this stage. Further, *Golden Rd. Motor Inn*, 376 P.3d 151, has not necessarily been abrogated by the later passage of NRS § 613.195, and the Court declines to decide that issue at this stage in this litigation. And as explained above, *Golden Rd. Motor Inn* suggests that the noncompete clause in the ICAs is both unenforceable, and that the Court need not re-write it to make it enforceable.

[4]While the Court is skeptical that a simple revenue split disclosed to prospective independent contractors without any confidentiality restrictions can constitute a trade secret, "[t]he determination of whether corporate information, such as customer and

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Plaintiffs' motion to dismiss Defendants' counterclaim (ECF No. 15) is granted. Defendants counterclaim is dismissed without prejudice, and with leave to amend. However, the part of the counterclaim based on the noncompete provision in the ICAs is dismissed with prejudice.

It is further ordered that, if Defendants decide to file an amended counterclaim—to the extent they are able to cure the deficiencies discussed herein—they must do so within 30 days of the date of entry of this order. Defendants' failure to file an amended counterclaim within 30 days will result in dismissal of the remaining part of their counterclaim with prejudice.

DATED THIS 10th day of May 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

pricing information, is a trade secret is a question for the finder of fact." *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). Thus, though the Court need not—and does not—rule on Plaintiffs' trade secret-related arguments herein, doing so would have been premature.